Good morning, your honors. May it please the court. The law is very clear on the issue of arbitration. Arbitration is clearly a matter of contract. While there is a public policy favoring arbitration whenever possible, it does not replace the necessity for a voluntary agreement to arbitrate. It's very, very clear. Absent a clear agreement to submit disputes to arbitrations, the courts cannot infer that the right to a jury trial has been waived. I respectfully submit that the evidence presented at the law in motion matter does not support the lower court's ruling. Clearly, there was no clear agreement to submit the disputes to arbitration. There were comments by the lower court about various quotations submitted by Custom. But the evidence that was submitted at the hearing shows that Cunico presented its own purchase order. That's excerpt page 57. What I think was the deciding factor, which was totally ignored by the lower court, was Custom's order acknowledgement, which is on excerpts pages 60 through 62, where it acknowledges that it was accepting Cunico's purchase order. But yet, despite having three pages of clarification, there was no indication that the terms and conditions that were hypothetically communicated to Custom, which we don't believe they were, were incorporated into the purchase order. Tell me exactly, in your view, what is the contract here? Very, very simple. The purchase order and the acknowledgement of the order. It's two simple contracts. Nowhere is there any reference on those two documents that say that the terms and conditions that Custom was trying to unilaterally impose upon Cunico were part of the contract. Now, the lower court went through an extended, I believe, incorrect analysis as to why the terms and conditions were included. But I submit that when you're dealing with arbitration, there's a higher burden that the party that is attempting to impose those terms and conditions should be made clear and very, very clear to the other side. Now, in the quotations, which were not accepted by Cunico, it says terms and conditions apply. It doesn't say incorporated here and by this reference. And I think it's the lower court minimized and basically said that it was totally irrelevant that whether or not Cunico accepted the terms and conditions of Custom, I believe, was incorrect. I think it's a critical factor. Counsel, that's a little bit of a misrepresentation. The district court didn't say that it was irrelevant as to whether you accepted them. It said it was irrelevant as to whether you received them. There's a difference. I agree. I misspoke and I apologize to the court. But I believe whether or not they received them is very, very important as to whether or not Cunico accepted them. If it never received them, then there's no way they could accept them. There has to be a clear agreement to accept those terms and conditions. This is like the pre-Internet click cases, right? Where you go on a website and you're going to order something and we've been holding in these cases that unless the terms and conditions, which include the arbitration, are readily accessible and can be seen immediately, then you haven't agreed to them when you purchase the product. I guess it's the pre-Internet version of that sort of a case. Well, unfortunately, this is a relatively old case, and I do agree with that. But once again, I think there's a higher burden even under today's law, especially the case that I had started, the Stark v. Square. It has to be easily accessible. And I think that custom was under a duty that if it wanted to impose arbitration, number one, it had to definitely make it clear to Cunico that it was imposing those conditions. But if you take a look at the terms and conditions themselves, you have a very, very small type paragraph without a separate heading, without any bold print, without specifically putting, clearly putting Cunico on notice that it was submitting any disputes to arbitration. But even more importantly, custom's very own provision says it is presumed. It is presumed. They have not shown by the evidence that was submitted below that Cunico accepted those terms and conditions. I'm sorry. It says presumed, accepted, unless we hear from the buyer in writing to the contrary within seven days. But did the buyer do that? Once again, the evidence was that Cunico never received any of those terms and conditions. The declaration of Michael Zorci said he reviewed the file of Cunico and there were no terms and conditions attached. On the various quotations, I forget the exact pages of the submission of the documents, there were not any attachments to terms and conditions. In the 420 pages that were submitted by custom, there was not a single mention or production of a document of terms and conditions. Counsel, you said a moment ago that you never accepted the quotation, but the district court thought that the quotation was an offer to sell and your purchase order was an acceptance of that offer. Why is that wrong? Well, I believe that the language that was used by the lower court was that it was an invitation to negotiate. And so basically what Cunico did, it issued its own purchase order. If it had accepted custom's quotation, all Cunico had to say was I accept your offer and therefore offer acceptance. Very, very simple. But that's not what Cunico did. What Cunico said was we are, this is our purchase order. This is the document we consider to be controlling. And while it might have quoted some of the language in custom's quote, unquote quotation, it did not include any language relating to the terms and conditions. But that, I mean, that might have been true under the common law, but the UCC 2207 says that your acceptance doesn't have to be identical to the offer. So, I mean, the fact that you had somewhat different language in your acceptance can still create a contract, can't it? Under certain circumstances, but I don't believe under the facts that we have here. Because if there was supposed to be an acceptance of terms and conditions, there has to be some sort of form of assent. There's not a single document with Cunico's name on it that says that we accept your terms and conditions. And even though it might be an old case and it might be common law, because custom is trying to impose its terms and conditions, I believe it has a duty to at least present evidence showing that they actually produced the terms and conditions. And there's no evidence before the lower court that said they actually did that. It said it's our custom and practice. Did you ever ask for them? I mean, you got this quotation that said subject to terms and conditions, but did you ask to see them? Well, once again, the lower court made an indication that we're dealing with sophisticated parties, but we really weren't. What we were dealing with is with contract administrators by Cunico. And so basically the evidence is that Cunico ignored the nine quotations of custom and issued its own purchase order. So I think the evidence would indicate that if Cunico is going to accept the terms and conditions, there has to be order acknowledgment. And because it did not incorporate that and because custom did not include in its own order acknowledgment that our terms and conditions apply, there's no agreement to arbitrate. There's no clear agreement to arbitrate. And most importantly, there is no manifestation of consent by Cunico to submit any disputes to arbitration. What I think what custom is trying to do is insert terms and conditions after the contract has already been accepted. And I believe that's inherently unfair. On the quotation documents on pages 129 through 150, not a single document references, well, there's not a single document that says terms and conditions. That's the evidence that you had before the lower court. So if they were, quote, unquote, part of the contract, it was supposed to be included in the quotation marks. What happened? What went wrong here? Why are you having this dispute? What was wrong with the product? Well, basically part of the problem, Your Honor, is that there's a custom mold. You have to understand, my client is involved with manufacturing parts for nuclear submarines. And so it's very, very important that the custom die that was used to put the tubes that are necessary. And so part of the problem we have is that they did not properly manufacture the tubes. And another critical factor is they are refusing to return the die, which cannot be used anywhere else. But that's irrelevant. The question is, whatever disputes we have, did CUNICO ever agree to arbitrate? And I believe that the record's void of that. I believe it's $75,000, Your Honor. But the problem is my client's in Los Angeles, and they're trying to force us to arbitrate in New York City, which even custom is a New Jersey company. And, you know, they're the ones that moved to remand the case to federal court. We were very, very happy to have the matter resolved in California courts. Have you tried to mediate this? We've engaged in numerous efforts to settle this case, but we have not been able to do so. The Ninth Circuit? Have you used the Ninth Circuit mediators? We have not, Your Honor, but there has been extensive settlement discussions back and forth on this. To me it seems like a relatively small amount of money to be going through all this dispute over where you're going to resolve it. Unfortunately, that's true, Your Honor, but it takes two people to agree to settle a case. And if one side takes a position that they're unwilling to settle it and they're insisting that the matter be arbitrated, I can't force them not to unless I could get the lower court's ruling reversed. How long do you think it would take to arbitrate this case? Do you have an estimate? Probably four or five days. The court mentioned that CUNICO did not respond to the terms and conditions. You can't respond to something that you never received. No, but you can respond to things that are plainly written in a formal document that you've received from the other side. But if you did not incorporate that document, CUNICO is not going to... It's referred there, and a curious party might say, well, what are the terms and conditions? That would be true if you were going to accept their quotation. CUNICO chose not to accept their quotation and issued its own purchase order, which in my mind said, we're ignoring your terms and conditions, and this is the contract. These negotiations took place in 2009, pre, you know, pretty much Internet, so to speak. And while there's been issues relating to merit-error image, there still has to be some sort of meeting of the minds that this is what we're agreeing to. And the fact that CUSTM did not incorporate in its order of acknowledgement that, hey, by the way, our terms and conditions are part of this contract, I respectfully submit that they withdrew that portion of whatever was done, and the court has to rely on the purchase order and the order of acknowledgement, none of which include any agreement to arbitrate. I respectfully submit that the record does not support the Court's ruling and that it is a reversible error to force CUNICO to submit to arbitration, and whatever time I have left, I would like the opportunity, with the Court's permission, to rebut any other issues raised by opposing counsel. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, Stephen M. Bernardo for CUSTM Alloy. So, in this Court's September 2016 order to the District Court, this Court directed the District Court to make factual findings as to what was the offer, what was the acceptance, and what were the terms of the contract, and that's what the District Court did on a factual basis. In 2008, CUSTM Alloy and CUNICO, two sophisticated manufacturing companies, they manufacture custom... Does it make a difference if they're sophisticated? It does, Your Honor, because so much of the case... Is there a different contract if they're not sophisticated? You mean if there's no... No, no, no. So much of the case of CUNICO has to do with saying, we're not sophisticated, we shouldn't be held to... Let me ask you the question, Nia. What is the contract? Okay. The contract is the quotation, the last quotation, that was accepted by the purchase order. And under the UCC... What was the last quotation? The last quotation is the October 29, 2008 quotation, which is found at ER 123-124. The October... I think it's October 29. Let me double-check the date. I'm sorry, October 9. Oh, October 9. Yes, October 9, 2008, and it's found at ER 123-124. It's two pages. And that's modified by the purchase order to the extent that there are lesser quantities ordered. But the district court clearly found that the purchase order referenced the quotation, and it, in large respects, repeated the quotation as to... Largely repeated the terms as to what the items were, what the specifications were, what the prices were, and so on. There's all these technical specs in there. A lot of that stuff is repeated, and the district court found that under UCC 2007 that that was an offer. There's no mirror image rule. I think we've all discussed that enough. The mirror image rule went out with the UCC, and that's why Kunneco's brief is citing cases from the 1930s and 1940s, because there is no mirror image rule. The only differences, the only significant differences from the purchase order to the final quotation are the reduction in the quantity of items being ordered. And for our purposes, it doesn't restate terms and conditions apply. But the UCC says unless provisions are in conflict, it's an acceptance. There's no conflict between the terms and conditions, which are referenced nine times in every quotation. There's no conflict between those terms and conditions and the purchase order. I would add that, as the district court noted, the Kunneco's allegation that the purchase order is the contract is belied by its own complaint, which contains... The key allegations of the complaint are representations that Custom Alloys supposedly made that are not in the purchase order. So if you look at SCR 17, the supplemental excerpts of the record, the complaint, if you go to paragraph 5 of the complaint, which is at SCR 17, you'll see that there are all these allegations that Custom, excuse me, that Kunneco is making in the case that are nowhere in the purchase order. So even Kunneco doesn't believe... I mean, these are the key allegations. Let me see if I can pull it up here really quickly. They allege that plaintiff would be the owner of the dye, that defendant would not use any outside personnel or contractors, that after the project was completed, plaintiff would be entitled to possession of the drawings and the engineering plans. None of that's in the purchase order. It's all stuff from the prior negotiations. So they don't believe it's the contract. Let me address a few of the points. Did you send the terms and conditions with the quotation? Mr. Owens' declaration was a little ambiguous on exactly when you sent the terms. No, the terms and conditions were sent with the invoices. Which was after the contract had been formed by their purchase order, in your view? Correct. So if we look at Mr. Owens' declaration, let me pull that up, 120 and 121. It says basically custom and practice, and that's what the district found, right? Right. And again, it gets back to... Obviously there was a dispute the first time we went through this. Mr. Owens basically said... Mr. Owens submitting his declaration, Mr. Zorzi submitting his declaration, Custom Alloy taking the position that the terms and conditions were provided to Cuneco, Cuneco saying they weren't provided to us. Mr. Owens making his statement based on custom and practice, Mr. Zorzi never completely denying that Cuneco received... What we really have are two declarations from important people at these companies. One saying, I'm pretty sure we sent them, but I can't be sure. And the other one saying, I'm pretty sure we didn't get them, but I can't be sure. And that's why the district court said, in the end, I can't make any findings as to whether something was actually sent and actually received. It just says it's irrelevant. I'm just going to say they were incorporated, they were referred to, that's clear. Don't know whether they were sent, but I'm going to find that Cuneco was on notice. One part of this troubles me. It says the terms and conditions were readily available. This is a finding by the district court. The terms and conditions were readily available to Cuneco. My question is how? It's not like Cuneco could go on the website and press the button for terms and conditions. How are they readily available? I think it's actually easier than that, and that was a point I wanted to get to, and I'm going to get to right now, which is in the current setting where you have to click and find... When you go on the Internet to try to buy something, to try to find something, it's almost impossible to get a live person. I mean, that's the frustration. If you can't, with a few clicks, or even one click, get to the document you're looking for, it's a big problem. Here, as the district court found, it was readily available because all they had to do was ask, and Judge Bybee, I believe that was part of... Why should it be their burden to ask when it's terms and conditions that your client wants to impose? Well, again, A, our position was... I mean, shouldn't they have been included with the first quotation? If you're going to quote something, and you're going to put out the key terms of the contract, is it enough to just say, our terms and conditions apply? Don't you have to say what they are, if that's the offer? Why should it be the burden on the other side to go, I don't know, what do we... searching for the terms and conditions, or even to ask you for them? Why wouldn't your client have the burden to just send them? Well, I don't think they have the burden under the law. I mean, should... If they want to incorporate them into the contract. It's the right thing to do, isn't it? Well, and that's what I was about to say. I mean, as a lawyer, if they call me and say, should we include them? I would say, of course, you should include them. There's obviously a paperwork issue here, and this is the change in the policy that Mr. Owens talks about, where you're going to have all these papers sent to the other side, and the same terms and conditions would be, you know, there would be like 20 of these documents in the file. Again, as a lawyer, would I have liked to have seen that sent right away? Of course I would. But there's lots of terms and conditions where we have... So what I'm going to ask you next is, given this crazy ambiguity about what were the terms and conditions, and really, that's why our three-judge panel sent it back to the district court in the first place. They got all these documents and said, hey, district court, tell us what the contract is. And I'm sitting here asking both sides again, hey, what's the contract? And that's what we're arguing about, and it's ultimately only about $75,000, and all you're really arguing about is the forum in which this is going to be decided. Why can't you guys just mediate it? Go in front of our Ninth Circuit mediators and make sure you spend another $75,000 plus litigating this. It seems really ridiculous to me. Well, I will say this. I know it's not part of this record, but since it came up before when Mr. Pardes was up here, Custom Alloy has not refused to, quote, return the die. Custom Alloy's position, we can look at the contract, or look at the documents. But the die, it says, if you look at the quotation, it says the die is to remain in the possession of Custom Alloy. Custom Alloy has offered to give Cunico the die to resolve this. Again, Cunico wants its $75,000, whatever the number is, and since you asked what the dispute is, Cunico's position is Custom Alloy made a faulty die, and that's the problem. Custom Alloy's position is, no, you said this is what we need. You told us what you needed us to make. We made it. It didn't work, and now you're blaming us. The issue is the money we've offered to return the die. I just want to address a couple things that were said. How long had your client and Cunico dealt with each other? I believe they had never dealt with each other before. I don't know the answer. This was the first time? I believe that's correct, and maybe Mr. Pardes knows otherwise. Are they continuing to deal with each other now on other matters? No. And after this, I don't think that's happening. Under your view of how the UCC contract formation should be analyzed, is there any substantive limit to what you could have put in the terms and conditions? I mean, suppose there were a term that we also charge a processing fee that's 100% of the purchase price, so we're effectively doubling the price by something we put in the terms. I think there are two limits that pop into my head. I mean, maybe we could come up with more. One would be something that actually conflicts with what is in the other documents, and then there's an issue as to what was accepted or not. The other would be an unconscionability limit, and so something that you describe, Your Honor, I think might qualify there. And if you said, well, we're going to charge double the price or whatever, at some point you would say that there's an issue of surprise and that it might shock the conscience. I think it would have to get to that level. Since we're talking about arbitration, though, Kuniko again repeats today, actually the exact words were, it's arbitration, you're giving up the right to go to court, there's a higher burden. And we keep hearing that. That appears in the papers. There's no case law cited for it. In fact, I would submit that that would be completely in violation of the FAA. The whole point of the FAA is that arbitration agreements are to be considered pursuant to the same contract terms as any other contract. I mean, the reason for being of the FAA is that states were disfavoring arbitration agreements, and so there shouldn't be a higher burden. And I guess the second part of that, I'm not going to repeat it all, but it gets back to this issue of sophisticated parties are not sophisticated parties. This is not a consumer arbitration agreement. This is not an employment arbitration agreement. So much of the case law, and that's what I usually deal with as an attorney, is those kinds of arbitration agreements, where now you've got all these special rules to protect employees and consumers. And that's, I mean, again, as Conoco's counsel said, this is a company that makes parts for nuclear submarines. This is not some low-level employee being asked to sign an arbitration agreement on penalty of termination. Let's see if there's anything else I specifically want to address. Obviously, I could go through the whole case, but there's 27 seconds left. I don't think there's anything else I really need to address right now. Is there any final question? No. I would submit that the papers state our position pretty clearly. Thank you, Your Honors. Thank you. Your Honors, may I have an opportunity to respond? Yes, you can have a minute. I take great exception with the fact that they've offered to return the die. That's not the case. But more importantly, I take exception when opposing counsel characterizes Conoco's purchase order as an acceptance of the quotation. If it was an acceptance of a quotation, it would have been I accept. In regards to the production of the terms and conditions, the court mis-evaluated the evidence. The evidence by Mr. Owen, it says, I cannot give you any date that the terms and conditions were sent. The issue was it was our custom and practice. Just the fact that it may have been their custom and practice doesn't mean on that  That's why the district court said, I'm not going to resolve that. I don't have any tools for doing that. So I'm going to decide this, and I'm going to deem it irrelevant as to whether it was actually received or not. But I believe Mr. Zorzi's declaration was the most reliable. He said, here's the complete Conoco file. Well, I read the Zorzi declaration. He says, we can't find it. But he couldn't say and did not say, he was very careful. I don't know if you had a hand in preparing him, but he was very careful in what he said. He didn't over-argue his case. He said, we couldn't find it. We didn't find it in our files anyplace. So we can't, we don't know that we ever received this thing. But the implication, I did draft the declaration, and I tried to tell the truth. You were very careful. But I think the clear reference is that here's our file. We have all these documents. But in this file, we don't have the terms and conditions. Sure. That's the best that Mr. Zorzi could say. Which is why Judge Anderson at some point said, wow, this is really, that will be really hard finding a fact to make, which you may not even be able to make here without the aid of a jury. I don't know. But he just said, it's irrelevant. It was referred to in this, and I find this to be the offer and this to be the acceptance. Very briefly, for there to be an agreement, there has to be a clear agreement to arbitrate. If there's no understanding as to what the terms and conditions are, number one, there can't be an agreement to arbitrate. Number two, there can't be an agreement to arbitrate. Thank you. All right. Thank you very much, counsel. CUNICO Corporation v. Customs Ally is submitted, and we'll take up Beavers v. Education.
judges: Wardlaw, Bybee, Miller